**Michael TAYLOR, Plaintiff,**

v.

**Everett THORNTON, Defendant.**

**No. 95–1306–CV–W–6–P.**

United States District Court,
W.D. Missouri,
Western Division.

Aug. 2, 2000.

Michael B Taylor, Topeka, KS, plaintiff pro se.

Bruce W. Simon, Simon & Simon, Kansas City, MO, H. Reed Walker, Robert A. Kumin, P.C., Mission, KS, Daniel E. Stuart, Overland Park, KS, for Everett Thornton, defendant.

### MEMORANDUM AND ORDER

SACHS, District Judge.

The court has previously dealt with certain issues in this case in denying a motion to dismiss and a motion for summary judgment. Docs. 17 and 25. I assume familiarity with those rulings and a general understanding of the remaining issues. The case has now been tried to the court on the merits.

Plaintiff Taylor was serving a federal sentence in 1995 and was transferred to Dismas House, a halfway house, preliminary to finishing his sentence. As a member of the Aryan Nations, he asserts a religious belief in racial segregation and a conscientious objection to sleeping in a room with "non-Europeans." He asserts his belief based on his group's reading of the Tower of Babel pronouncements in Genesis, which he believes forbid racial mixing. Pl.Exh. 1.

Upon arrival at Dismas House Taylor asked to be housed with white persons. He refused assignment to a previously designated room because one or more African Americans were housed there. The admitting employee responded that this created a "problem," but placed Taylor overnight in a room where all inmates were away on weekend passes. It seems probable that the three or four regular residents were white persons. Taylor has been insistent on having his "religious views" accommodated.[1] This was done for one night, given the late hour of the arrival.

Witnesses from Dismas House concur in testimony that Taylor said he wanted to be returned to prison (or at least the local jail) because he had been told that no continuing accommodation to his demands could be made. I am inclined to believe there was some misunderstanding of what was said. Taylor was very desirous of remaining at the halfway house, not far from the family home in Topeka. He liked the "hotel" atmosphere. He surely was unyielding in his preference for remaining at Dismas House. Whatever statements were made about returning to the penitentiary or to jail were obviously made under protest.

As the message was conveyed to the defendant Executive Director of Dismas House, Reverend Thornton, however, it may well have indicated a willingness to return to the federal penitentiary. This has some bearing on the ultimate issue, whether there was retaliatory intent in calling the Bureau of Prisons and asking that Taylor be returned.

---

1. For purposes of this ruling I assume the sincerity of the views and that they are based on a reading of the Bible. Defendant contends, however, that since Taylor accepts an integrated setting for everything except sleeping quarters this places in doubt the sincerity of his convictions. I assume, however, that separate sleeping quarters are a core aspect of his beliefs.

Ms. Spriggs, who had the initial significant conversation with Taylor, wrote it up, under date of November 24, 1995, as including a statement that "he would rather go back to the institution." D.Exh. 5. This should not be understood as a simple request to be returned, but was so interpreted.

Mr. McGill who, with Reverend Flowers, made the ultimate recommendation to Reverend Thornton that Taylor be returned to the Bureau of Prisons, testified that the motivation also included some concern for Taylor's safety, because he believed Taylor's refusal to be housed with African Americans had become known to other inmates. This is credible, although I am inclined to believe that Dismas House policy on integration was the major stumbling block to accommodating Taylor.

Reverend Flowers testified credibly that the policy against segregated sleeping quarters was invariably followed, even when Black Muslims may have preferred separate housing.

Although the staff at Dismas House is integrated (and led by an African American) and inmate occupancy may be largely minority, there was testimony that residents are accepted who could be unpopular with the management of the halfway house, including at least one former member of the Ku Klux Klan and a "Croatian Nazi."

█ I conclude that Reverend Thornton had no retaliatory motive in approving returning Taylor to the Bureau of Prisons. He knew very little about the background, except that Taylor was refusing to accept integrated sleeping quarters, an invariable housing practice. There is no evidence that any of the employees were hostile toward Taylor because of his beliefs. His polite manner was a helpful shield against

hostility. Taylor was not written up as disobedient or a violator of Dismas House rules, which might have prejudiced him with the Bureau. There was no intent to punish Taylor because of his beliefs.

Turning to the legal issues, although my prior rulings are inconsistent with an obligation to accommodate Taylor's beliefs, even if religious in nature, Taylor has difficulty in accepting the hopelessness of that part of his legal claim.

█ Segregated prison facilities are plainly unconstitutional. *Mason v. Schriro*, 45 F.Supp.2d 709, 714 (W.D.Mo.1999) (Laughrey, J.).[2] Accommodating Taylor overnight was permissible in dealing with an emergency situation but it was both law and "policy" that precluded long-term accommodation as requested. As recently stated by a federal judge in Illinois, "plaintiff has failed to cite a single precedent suggesting that the prison's attempt to house him with an African American cell mate ... violates the First Amendment and the court has not discovered any such precedent." *Pool v. McGee*, 1999 U.S.Dist. LEXIS 7032 (N.D.Ill.1999).

Plaintiff contends that the Eighth Circuit has endorsed his First Amendment right to have unconventional racial opinions. The case cited deals with inmate mail, and simply rules that a "total ban on Aryan Nations material violates inmates' rights to free speech and religious expression." *Murphy v. Missouri Dep't of Corrections*, 814 F.2d 1252 (8th Cir.1987). This ruling is a far cry from authorizing members of the organization to assert their religious beliefs as a basis for obtaining segregated housing, a flagrant violation of the constitutional rights of others to live in an integrated public facility. A racially-privileged sub-community sanctioned by federal agents would violate one of the most fundamental of American constitutional values.[3]

---

**2.** I assume there could be a *Bivens* case against the management of the House if a constitutional violation occurred, given the status of Dismas House as a "federal agent," by reason of its contract with the Bureau of

Prisons. See *McChan v. Corrections Corp. of America*, 1997 WL 104110, 1997 U.S.Dist. LEXIS 2606 (D.Kan.1997).

**3.** As with the old Mormon practice of having multiple wives, this is one of the areas of law

The issue of retaliation is essentially a factual question that I was unable to resolve without trial. Supporting Taylor's contention is the simple question of timing; he asserted religious scruples against integrated housing and was quickly sent back to less desirable quarters. But the motivation was most clearly governed by the policy and the law which mandate integrated housing, Taylor's unwillingness to comply with such policy, and, to some extent, avoidance of a possible confrontational situation between Taylor and other residents who knew of his views about racial segregation. Nothing persuasive supports an inference of hostile retaliation and I accept the credible denials of the Dismas House witnesses.

Judgment will be entered in favor of defendant. SO ORDERED.

where religious practices cannot trump other legal principles. See *Church of Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520, 535, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). I doubt that any member of the Supreme Court disagrees with the observation that "polygamy can be criminalized." *Romer v. Evans,* 517 U.S. 620, 650, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (dissent).